UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHNNY MORRIS, | : | Case No. 3:11-cv-432 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to a period of disability and disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 8-17) (ALJ's decision)).

**I.**

On August 30, 2006, Plaintiff applied for disability insurance benefits, asserting that he was disabled and could no longer work, beginning June 30, 2006. (Tr. 109-11, 133). Plaintiff claims that he was unable to work because of liver disease, right knee problems, and bilateral foot pain. (*Id.*) Plaintiff's claim was denied initially and on reconsideration. (Tr. 60-61). Plaintiff requested a hearing, which was held before an ALJ on January 7, 2010. (Tr. 27-59). Plaintiff and a vocational expert testified at the hearing, with Plaintiff's attorney in attendance. (*Id.*)

The ALJ found that Plaintiff was not disabled because, despite his severe physical impairments, he could perform a restricted range of light work, including his past relevant work as a labor union business representative. (Tr. 5-17). The ALJ's decision became final and appealable in October 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. 9-11). Plaintiff subsequently filed this action in this Court seeking judicial review pursuant to Section 205(g) of the Act. *See* 42 U.S.C. §§ 405(g).

Plaintiff is 63 years old. He has a twelfth grade education and additional training by way of an electrical apprenticeship. (Tr. 138). Plaintiff has past relevant work experience as an electrician and labor union business representative.[1] (Tr. 17).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 30, 2006, the alleged disability onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: 1) status post remote (2000) liver transplant; and 2) degenerative joint disease of the right knee (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[1] Plaintiff was still employed in this position when he decided not to run for re-election. (Tr. 17).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) subject to: 1) no climbing of stairs, ropes, ladders, or scaffolds; 2) no stooping or kneeling; 3) no exposure to hazards such as dangerous machinery or unprotected heights; 4) no repetitive use of foot controls; and 5) no more than occasional work on uneven surfaces.

6. The claimant is capable of performing his past relevant work as a labor union business representative. This work does not require the performance of work-related activities precluded by his residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2006, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 10-17).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB. (Tr. 17).

On appeal, Plaintiff argues that: (1) the ALJ erred in finding that Plaintiff could perform his past relevant work; and (2) the ALJ erred in finding that Plaintiff was not credible. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359,

362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

On July 12, 2006, Dr. Pamela Daufel saw Plaintiff for complaints of back pain. Dr. Daufel determined that Plaintiff had some diffuse upper lumbar tenderness and a reduced range of motion. (Tr. 226).

Dr. Marc Greenberg, a podiatrist, saw Plaintiff on September 26, 2006, for bilateral heel and arch pain. Plaintiff was diagnosed with plantar fasciitis which was

severe and worsening, bilateral calcanel spur, and bilateral limb pain. He had pain with walking, running, hard surfaces, bare feet, standing, and uneven surfaces. On exam, he had some decreased pulses and varicosities. Plaintiff had some atrophy of the fat pad to the heel on the left. (Tr. 186-187). X-rays showed:

> Pronation, calcaneal inclination angle decreased bilateral, navicular drop bilateral, planter calcancal spur large bilateral, hammertoe deformity toes 2 bilateral and moderate hallux valgus bilateral.

(Tr. 187).

Plaintiff was seen for right knee pain on September 5, 2006. The examination showed tenderness and significant effusion. X-rays of his knee revealed "fairly advanced knee arthritis with significant joint space narrowing, significant peripheral osteophyte formation." (Tr. 189-190). The diagnosis was right knee degenerative joint disease, and Plaintiff was treated with an injection. (Tr. 189). October 2, 2006, he was seen again for continued pain. On exam, he had tenderness over the medial joint line. The diagnosis was degenerative joint disease, and he was treated with an injection. Dr. Dunaway stated that Plaintiff would probably need a total knee replacement in the future. (Tr. 188). On May 21, 2007, Plaintiff had discomfort and tenderness and was given an injection for his advanced degenerative arthritis. (Tr. 296). He continued to have tenderness and discomfort and was treated with injections through February 20, 2008. (Tr. 291-295). He was prescribed Vicodin on April 14, 2008 as well as given an injection for his discomfort and tenderness. (Tr. 289-290).

Dr. Anton Freihofner, a non-examining physician, reviewed the record on November 6, 2006. (Tr. 205-211). He opined that Plaintiff could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds. He could stand/walk for six hours out of eight and sit for six hours out of eight. (Tr. 205). Plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. He could occasionally kneel, crouch, and crawl. (Tr. 206). Dr. Freihofner found that Plaintiff's symptoms were attributable to a medically determinable impairment and that the severity or duration of those symptoms were not disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairment(s). (Tr. 209). His assessment was affirmed on May 16, 2007 by Dr. Myung Cho, another non-examining physician. (Tr. 257).

Dr. Greenberg submitted his office notes dated June 8, 2004 through November 7, 2006. (Tr. 214-217). Plaintiff was treated for bilateral heel pain. The diagnosis was calcaneal spur, limb pain, and plantar fasciitis bilaterally. He was treated with orthotics. (Tr. 214, 216-217). On November 7, 2006, his "[g]ait and station reveal[ed] cavus foot type bilateral." (Tr. 215). His orthotics were working and he had pain only when he went barefoot. (*Id.*) On March 12, 2007, Dr. Greenberg stated that Plaintiff's degree and intensity of pain was consistent with the degree of the physical findings. Plaintiff's gait was normal. (Tr. 213).

Plaintiff underwent an abdominal ultrasound on December 4, 2006 because of his history of mesenteric thrombosis.[2]  It indicated hepatic steatosis, splenomegaly, and stable mild diffuse cortical thinning of the kidneys.  (Tr. 218).  He had a scan on December 11, 2006, which showed minor decrease of bone mineral density of his lumbar spine.  (Tr. 222).

Dr. Daniel Dunaway's treatment records, dated September 14, 2004 through March 26, 2007, were made a part of the record.  Plaintiff was treated for right knee pain, caused by osteoarthritis, with injections.  (Tr. 253-256).  June 14, 2004 x-rays of his right knee showed "advanced degenerative arthritis with some joint space narrowing and peripheral osteophyte formation…[and] [s]ignificant varus deformity."  (Tr. 251).  On examination, he had crepitation in his right leg.  His right shoulder had tenderness and positive impingement and impingement reinforcement signs.  (Tr. 246).  Plaintiff continued to be treated with injections and anti-inflammatories.  (Tr. 240-245, 247, 250).  He continued to have synovitis owing to degenerative arthritis and was treated with injections.  (Tr. 236).  A September 5, 2006 x-ray revealed "moderately advanced degenerative arthritis with some joint space narrowing and peripheral osteophyte formation."  (Tr. 249).

---

[2]  Mesenteric thrombosis is a clot that blocks blood flow in the mesenteric vein, one of two veins through which blood leaves the intestine.  The condition interrupts the blood supply to the intestine and can result in damage to the intestines.

Additional treatment records from Barrett Center, dated March 19, 2007 through April 8, 2008, note that Plaintiff was seen in follow up for his liver transplant[3] and history of mesenteric thrombosis. (Tr. 262-266, 269-272, 276-282). On March 19, 2007, September 10, 2007, and April 8, 2008, he had no complaints. (Tr. 263, 266, 280).

Plaintiff had an abdominal ultrasound on May 18, 2007 which showed "[d]iffuse increased echodensity of the liver consistent with diffuse hepatocellular disease versus fatty infiltration…, [m]ild diffuse cortical thinning of the kidneys bilaterally…, [and] [s]plenomegaly." (Tr. 286).

Plaintiff was seen by Dr. Dunaway, his orthopedist, from December 15, 2008 to November 2, 2009, for complaints of right knee degenerative arthritis. He continued to have discomfort and on exam, had tenderness, crepitation, and effusion. He was treated with an injection and told to continue knee strengthening exercises. (Tr. 521-524, 526-530, 534-535). June 5, 2009 x-rays revealed advanced degenerative arthritis of his right knee which was bone-on-bone with some shifting of his tibia. His left knee showed arthritic changes that were not as advanced as his right knee. Shoulder x-rays demonstrated some AC arthritis and type II acromion bilaterally. (Tr. 525). Dr. Dunaway diagnosed Plaintiff's shoulder impartment as "bilateral shoulder rotator cuff tendonitis with the right more symptomatic than the left." (Tr. 524). He had positive impingement

---

[3] Plaintiff had a liver transplant on January 22, 2000. He needed the transplant due to alcohol induced cirrhosis. (Tr. 184).

and reinforcement signs of the shoulders and left hip trochanteric bursitis.[4] Plaintiff was given injections for his shoulders and knees. (*Id.*) On July 6, 2009, Plaintiff reported that he wanted to proceed with a total knee replacement. (Tr. 523).

**B.**

First, Plaintiff alleges that the ALJ erred in finding that Plaintiff could perform his past relevant work as a labor union business representative because, while performing this job, he was often exposed to workplace hazards, which are precluded by the ALJ's RFC.

The vocational expert testified that the DOT's description for labor union business representatives includes "visits to work sites to ensure management," and that if the past work was for a construction union, with visits to hazardous sites, the RFC would preclude performance of such past relevant work. However, this takes into consideration only how Plaintiff specifically performed the job, as a business representative for a construction union, and not how the job is generally performed.

Substantial evidence that the job can be performed either as a claimant performed it or as it is generally performed is sufficient for a step four finding that a claimant can perform his past relevant work. *See* SSR 82-61. *See also Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (in determining whether a claimant can perform his past relevant work, the Secretary may rely on the requirements of the job as the claimant performed it, or on the requirements of the job as it is generally performed

---

[4] Trochonteric bursitis is inflammation of the bursor (fluid filled sac near a joint) at the outside point of the hip.

in the national economy). The ALJ clarified this point with the vocational expert: "Simply stated, [VE Srinivasan] indicated that the claimant could still perform such work as that work is described in the DOT." (Tr. 16, 55). *Taylor v. Sec'y of Health & Human Servs.*, No. 90-5675, slip op. at 2-3 (6th Cir. Jan. 8, 1991) (claimant did not overcome the presumption that the DOT accurately describes his or her past relevant work).

Therefore, it is irrelevant whether Plaintiff could still perform his job as he specifically performed it, since there was substantial evidence to support the ALJ's determination that Plaintiff could perform the job of a labor union business representative as it is generally performed.

### C.

Next, Plaintiff maintains that the ALJ erred in finding that Plaintiff was not credible.

"[I]n evaluating the claimant's subjective complaints of pain an administrative law judge may properly consider the claimant's credibility, and we accord great deference to that credibility determination." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). *See also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) ("Indeed, '[t]he opportunity to observe the demeanor of a witness, evaluating what is said, and considering how if fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.'").

Plaintiff argues that the consultative examinations and state agency assessments from December 2000 (relating to Plaintiff's prior application for DIB) should not be used

to find that he is not credible, since the alleged onset of disability date for the application at issue is June 2006. (Tr. 365-83). However, there is no evidence that the ALJ relied on these opinions from 2000 in his credibility finding. Moreover, the ALJ did rely on the timely November 2006 and May 2007 assessments from state agency physicians Freihofner and Cho, for his RFC finding – these doctors concluded that Plaintiff had the RFC for a restricted range of light work. (Tr. 204-11, 257).

Next, Plaintiff claims that the ALJ improperly engaged in the "sit and squirm test."[5] The ALJ noted in his decision that Plaintiff did not use a cane, appeared to have no difficulty sitting or rising, and did not seem in any pain or distress during the hearing. (Tr. 16). Social Security Ruling 96-7p notes that an ALJ "is not free to accept or reject the individual's complaints solely on the basis of such personal observations but [an ALJ] should consider any personal observations in the overall evaluation of the credibility of the individual's statements." However, there is no evidence that the ALJ based Plaintiff's credibility "solely" on his observations at the hearing.

Plaintiff also asserts that the ALJ improperly determined that Plaintiff's daily activities supported a finding that he could perform work activity on a regular and sustained basis, noting that Plaintiff had received only conservative treatment for his knee pain. Again, these findings were two of multiple facts the ALJ took into consideration when determining Plaintiff's credibility. Moreover, the ALJ's finding that Plaintiff's

---

[5] An ALJ may not rely on a "sit and squirm" test to evaluate the credibility of a claimant's pain complaints. *Weaver v. Sec'y of Health & Human Services*, 722 F.2d 310, 312 (6th Cir. 1983).

descriptions of his daily activities (washing clothes, driving and leaving his house on a daily basis, taking yearly three-week vacations to Seattle, taking his wife to the store, moving his yard with a riding lawn mower, and regularly visiting friends) is not inconsistent with a capacity for light work. *See, e.g., Gumbert v. Astrue*, No. 1:10cv333, 2011 U.S. Dist. LEXIS 92247, at *35 (S.D. Ohio July 22, 2011) ("The ALJ noted that [the claimant] cooks, does laundry, makes her bed, washes dishes, goes to the grocery store, and occasionally cut the grass using a riding mover. The ALJ reasonably found that the ability to engage in these activities is not indicative of pain or symptoms so sever that all work activity would be precluded"). Additionally, it was appropriate for the ALJ to consider that Plaintiff had only had conservative treatment for his knee pain, because the pain appears to have been present since 2004 – two years before his alleged onset of disability and while Plaintiff was still working and visiting construction sites. (Tr. 15-16). *See* 20 C.F.R. § 404.1529(c)(3)(v), (vi) (ALJ may consider treatment and other measures to relieve symptoms in evaluating credibility). Accordingly, the ALJ's credibility determination is supported by substantial evidence.

While Plaintiff may disagree with the ALJ's decision, his decision is clearly within the "zone of choices" afforded to him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference."). The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported

by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Johnny Morris was not entitled to a period of disability nor disability insurance benefits, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date: 8/27/12         *s/ Timothy S. Black*
                     Timothy S. Black
                     United States District Judge